UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SOBHI ABBAS,

          Petitioner,

v.

U.S. CITIZENSHIP AND
IMMIGRATION SERVICES,

          Respondent.

_____/

Case No. 2:23-cv-12873

Honorable Susan K. DeClercq
United States District Judge

## BENCH TRIAL FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL ORDER

In this case, Petitioner Sobhi Abbas, a citizen of Lebanon and a lawful permanent resident of the United States, seeks review of Respondent United States Citizenship and Immigration Services' (USCIS) denial of his Petition for Naturalization. From August 12 to August 15, 2025, this Court held a bench trial during which it reviewed exhibits and heard live testimony from five witnesses.[1] When the testimonial evidence conflicted, the Court, as fact-finder, made credibility determinations. Based on the evidence presented at trial, and as set forth in the

---

[1] The parties' post-trial briefing was delayed as a result of the lapse of funding for the Department of Justice from October 1, 2025 to November 12, 2025. *See* ECF Nos. 24; 26.

following findings of fact and conclusions of law, the Court holds that Plaintiff's Petition must be granted.

## I. FINDINGS OF FACT

Plaintiff Sobhi Abbas is a 65-year-old man, born in Baalbeck, Lebanon. *See* ECF No. 20 at PageID.144; Ex. Q, Passport, at Q.19. He is a citizen of Lebanon and possesses a valid Lebanese passport. *See* Ex. Q, Passport, at Q.19.

In 1984, Abbas married Fatme Hachem in Lebanon and they lived together in an apartment building owned by Abbas's family in Baalbek from 1984 until Abbas moved to the United States in 1997. *See* ECF No. 20 at PageID.182–83. Abbas now owns the apartment through inheritance. *See id.* at PageID.155. He has ten brothers and sisters, some of whom lived and continue to live in the same family-owned apartment building, including his sister Ozeina with whom Abbas is "especially close." *Id.* at PageID.181.

Abbas and Hachem had three children while living in the apartment in Baalbek: Ayat, Alaa, and Mohamad Ali. *See Id.* at PageID.182–83. When Abbas is not in Lebanon, no one lives in his apartment. *See id.* at PageID.192. However, his daughters or sisters may use it occasionally. *Id.*

Abbas became a lawful permanent resident of the United States in 1997. *Id.* at PageID.145. He and his wife had another child, Mohamad Hussanin, after they moved to the United States. *See* ECF No. 21 at PageID.275. Abbas's other

children—Ayat, Alaa, and Mohamad Ali—became U.S. citizens in 1999 or 2000. *See* ECF No. 20 at PageID.183.

In 2000, Abbas's family moved back to Lebanon for three years and lived in his apartment in Baalbek. *See* Ex. AI, Ayat Dep., at AI.9–10; ECF No. 21 at PageID.288.

In 2003, Abbas and his family returned to the United States and moved into a house in Dearborn, Michigan on Pinehurst. *See* ECF No. 20 at PageID.184–85. Abbas paid rent at that house. *Id.* At that time, he worked as a stock clerk at a company called Mid America. *See* Ex. AU, First App., at AU.5.

In 2009, Abbas's daughter Ayat bought a tobacco shop and Abbas began working as a cashier at that store. *See* ECF No. 20 at PageID.193; Ex. AU, First App., at AU.5.

Between 2012 and 2020, Abbas left the United States only once, to attend a funeral in Lebanon in 2014. *See* ECF No. 20 at PageID.151–53.

In 2016, Abbas separated from his wife and moved out of the house on Pinehurst. *See* ECF No. 20 at PageID.194. He moved into an apartment on Cranford, where he lived alone and paid the rent and bills. *Id.*

In May 2017, Abbas applied for naturalization.[2] *See* Ex. 2, Second App., at 2.19. He continued to reside in his apartment on Cranford until September 2019, at which point he moved in with his son Mohamad Ali on Buckingham. *See* ECF No. 20 at PageID.195–97. In early 2021, Abbas's daughter sold the tobacco shop, so he stopped working there. *Id.* at PageID.197.

In April 2021, Abbas took a four-and-a-half-month trip to Lebanon. *See* Ex. 2, Second App., at 2.9. While there, he stayed at the apartment he owned in Baalbek. *See* ECF No. 20 at PageID.202. On this trip, he visited friends in Beirut, visited an ancient city, and took care of his sister Ozeina, who was recovering from a stroke. *See id.* at PageID.172–73; ECF No. 21 at PageID.354; Ex. 2, Second App., at 2.9 ("went to Beirut"); Ex. AA, Interview Video, at 59:32 to 1:00:35.

While Abbas was in Lebanon, Mohamad Ali sold the house on Buckingham at which Abbas had been living and moved Abbas's furniture into storage at a warehouse. *See* ECF No. 20, PageID.203. So when Abbas returned to the United States in September 2021, he stayed in a guest room at his daughter Alaa's house in Dearborn Heights, Michigan, on Cecile. *See id.* at PageID.204–05.

A little under a month later, Abbas returned to Lebanon for three and a half months. *Id.* at PageID.205. While there, he stayed at his apartment in Baalbek and

---

[2] This was Abbas's second application for naturalization.  His first had been denied for technical reasons. *See* ECF No. 21 at PageID.331–33.

cared for his sister Ozeina. *See* Ex. A, N-400 Decision, at A.2. Abbas came back to the United States in January 2022, and once again stayed at Alaa's house on Cecile Street. *See* ECF No. 20, PageID.208.

In March 2022, Abbas took a five-and-a-half-month trip to Lebanon. *See id.* at PageID.209. He again stayed at his apartment in Baalbek and took care of his sister, Ozeina. *Id.* When Abbas returned to the United States in September 2022, he again stayed at his daughter Alaa's house on Cecile. *See id.* at PageID.212.

During 2021 and 2022, Alaa and Mohamad Hussanin had discussions about whether Abbas would stay at Alaa's house or Mohamad Hussanin's house when he returned from his trips to Lebanon. *See* ECF No. 21, PageID.277–78 ("Alaa, she wanted [Abbas to live with her] more."), 290. All of Abbas's furniture remained in storage, and Abbas changed his address on some of his credit and consumer cards to his son Mohamad Hussainin's house on Myrna. ECF No. 20 at PageID.210, 206.

Following Abbas's September 2022 return to the United States, he applied for and obtained a job at City Recyclers, a company owned by Alaa's husband. *See id.* at PageID.213. Abbas lived at Alaa's house until March 2023 when he moved to his son Mohamad Hussanin's house on Myrna. *See id.* at PageID.213.

Abbas lived with Mohamad Hussanin until January 2024, at which time he moved into his own apartment on Tobin Drive in Inkster, Michigan. *See id.* at PageID.215. Around the time that Abbas moved into the Tobin Drive apartment, he

bought a car. *See id.* at PageID.198, 215–16. He moved most or all of his things out of storage at that time. *See id.* at PageID.214–15. He currently pays rent and bills at the apartment on Tobin Drive. *Id.*

In October 2022, USCIS issued a notice to Abbas at the Buckingham address notifying him that it had scheduled an interview for his application for naturalization. *See* ECF No. 21 at PageID.338–39; Ex. 1, A-File, at 1.758. Abbas did not live on Buckingham in October 2022, but the notice was issued to that address because Abbas had not updated his address with the agency when he moved. *See* ECF No. 21 at PageID.338–39. The notice was also issued to Abbas's attorney. *Id.*

The following day, Abbas changed his address in the USCIS system. *See id.* at PageID.339. He listed his address as being on Myrna Street, where Mohamad Hussanin lived, even though he was living with his daughter Alaa on Cecile at that time. *See Id.*; Ex. 1, A-File, at 1.1617; ECF No. 20 at PageID.213.

In October 2022, a USCIS official interviewed Abbas regarding his application for naturalization. *See* Ex. 2, Second App., at 2.21. Abbas testified at the interview under oath and the interview was recorded by video. *See* ECF No. 20 at PageID.217; ECF No. 21, PageID.341. USCIS denied Abbas's application on November 3, 2022, concluding that he failed to establish continuous residence based on periods of travel outside the United States. *See* Ex. A, N-400 Decision. USCIS

affirmed the denial on the same basis following an administrative hearing. *See* Ex. C, N-336 Decision.

## II. CONCLUSIONS OF LAW

### A. Standard of Review

District courts review the denial of an application for naturalization de novo "and the court shall make its own findings of fact and conclusions of law." 8 U.S.C. § 1421(c). However, the district court may consider the plaintiff's statements and evidence submitted during the administrative process when determining whether the plaintiff is eligible for naturalization. *See, e.g., Berenyi v. Dist. Dir., Immigr. & Naturalization Serv.*, 385 U.S. 630, 632–34, 637–38 (1967). Plaintiff bears the burden "to show his eligibility for citizenship in every respect." *Id*. at 637; *see also I.N.S. v. Pangilinan*, 486 U.S. 875, 886 (1988) (quoting *Berenyi*); 8 U.S.C. § 1427(e); 8 C.F.R. § 316.2(b). All "doubts should be resolved in favor of the United States and against the claimant." *Berenyi*, 385 U.S. at 637.

### B. Continuous Residence Requirement

An applicant for naturalization must demonstrate, *inter alia*, that they "resided continuously within the United States from the date of the application up to the time of admission to citizenship." 8 U.S.C. § 1427(a)(2). This is the only naturalization requirement at issue in this case.

The Immigration and Nationality Act (INA) defines the term "residence" as "the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent." 8 U.S.C. § 1101(a)(33). The statute does not define the term "continuously." *See generally* 8 U.S.C. § 1101. However, it does expressly state that absences from the United States over one year breaks continuity, and absences between six months to a year create a rebuttable presumption that continuity was broken. *See* 8 U.S.C. § 1427(b); *see* also 8 C.F.R. § 316.5(c). INA regulations offer guidance as to what evidence may establish that an applicant did not disrupt the continuity of his or her residence:

> (A) The applicant did not terminate his or her employment in the United States; (B) The applicant's immediate family remained in the United States; (C) The applicant retained full access to his or her United States abode; or (D) The applicant did not obtain employment while abroad.

8 C.F.R. § 316.5(c)(1)(i).

### 1. Interpretation of Absence Provision

Based on the language of 8 U.S.C. § 1427(b), Abbas argues that since it is undisputed that he did not leave the county for more than six months, he has met the continuous residency requirement. Abbas's position, put another way, is that an applicant is not required to prove that they have not abandoned their residency until there is an absence for more than six months. The government, however, argues that

absences of less than six months can break continuity of residence. Since neither party cites any binding authority from the Sixth Circuit on this issue, this Court must turn to principles of statutory construction and non-binding case law to inform its decision.

Because the word "continuously" is not defined in the statute, *see* 8 U.S.C. §1101, it must be "interpreted in accordance with [its] ordinary meaning." *BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 91 (2006). The Mirriam Webster dictionary defines "continuous" as "marked by uninterrupted extension in space, time, or sequence." (Mirriam Webster, Continuous, https://www.merriam-webster.com/dictionary/continuous?src=search-dict-box (last visited July 2, 2025)). Similarly, the Oxford English Dictionary defines "continuous" as: "Characterized by continuity; extending in space without interruption of substance; having no interstices or breaks; having its parts in immediate connection; connected, unbroken." (OED, Continuous, https://www.oed.com/dictionary/continuous_adj ?tab=meaning_and_use#8456620 (last visited July 2, 2025)).

Taking these definitions together, to prove continuous residency, an applicant must show that his residence within the United States was "unbroken" and "without interruption" from the time he filed his N-400 application until today. *See* 8 U.S.C. § 1427(a)(2). Abbas's contention that a break in continuity of residency can never include **any** duration shorter six months is unpersuasive.

Indeed, Abbas's proposed interpretation would render the term "continuous" superfluous, which goes against principles of statutory interpretation that guide courts to "aim to giv[e] effect to every clause and word of a statute." *See Polselli v. Internal Revenue Serv.*, 598 U.S. 432, 441 (2023) (quotation omitted). Instead, a more reasonable interpretation, which can be reconciled with the full language of the statute, is that although the statute "assumes a break in continuity of residence in specific scenarios (e.g. absences longer than six months), it does not preclude a finding of a break in residency absent those circumstances." *Sharma v. U.S. Dept. of Homeland Security*, 2009 WL 10697616 (S.D. Tex. 2009).

This is especially true since, taken to its logical end, Abbas's position would permit an applicant to "reside outside the United States for the overwhelming majority of time between the filing of his application and his admission to citizenship so long as the applicant returns to the United States just prior to the running of the six-month or one-year abandonment period." *Iqbal v. United States Citizenship and Immigr. Servs.*, 397 F.Supp.3d 273, 282–83 (W.D.N.Y. 2019) (finding such a position leaves § 1427 without any significant meaning). Such an interpretation would not be in keeping with the statute's requirement of continuous residence in the United States. *See Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 71 (1982) ("Statutes should be interpreted to avoid untenable distinctions and unreasonable results whenever possible.").

- 10 -

In sum, Abbas's argument is not supported by law, so this Court must proceed to determine whether his absences from the United States broke his continuous residence.

## 2. Abbas's Residence

The government argues that Abbas did not continuously reside in the United States in 2021 and 2022 because he lived in Lebanon during parts of those years. It contends that unlike Abbas's other trips to Lebanon, his travels in 2021 and 2022 were "fundamentally different." ECF No. 29 at PageID.471. Specifically, the government argues that "Abbas dissolved nearly all of the traditional indicia of his residency in the United States." *Id*. For example, he separated from his wife, his children were grown, he was unemployed, did not have a car in the United States, and was not paying for his housing in the United States. *Id*. at PageID.471–72.

In contrast, Abbas contends that he continuously resided in the United States, emphasizing the facts that the entirety of his immediate family—all United States citizens—remained in the United States, and while Abbas was in the United States, he resided with his adult children which is "the custom of their culture." ECF No. 30 at PageID.490. Abbas also points out that all of his finances, including bank and credit card accounts remained in the United States. *Id.*

### a. Regulation Factors

Turning first to the INA regulations. Section 316.5 of the INA regulations

provides guidance on how to determine the issue of whether an extended absence disrupted the continuity of an applicant's residence. *See* 8 C.F.R. § 316.5. It provides that the following "may establish" that continuity was not disrupted:

> (A) The applicant did not terminate his or her employment in the United States:
> (B) The applicant's immediate family remained in the United States;
> (C) The applicant retained full access to his or her United States abode; or
> (D) The applicant did not obtain employment while abroad.

*Id*.

Even assuming the first factor is not satisfied because Abbas stopped working in the United States from 2021 to 2022, the remaining three factors support the continuity of Abbas's residence in the United States. First, Abbas's immediate family was all in the United States. Although Abbas has many siblings in Lebanon, including a sister with whom he is particularly close, it is undisputed that all of his children, their spouses, and his grandchildren remained in the United States. The government argues that this family-ties factor is lessened somehow because Abbas's children are adults, but it is clear that he maintained an extraordinarily close relationship with his children.  Indeed, he lived with his son Mohamad Ali in his son's house from 2019 to 2021—years prior to the time period in question. *See* ECF No. 20 at PageID.195–97. When Mohamad Ali sold his house, he arranged for Abbas's furniture to be stored until Abbas returned. *Id*. at PageID.203. And when Abbas returned to the United States after Mohamad Ali had moved, Abbas instead

lived with his daughter Alaa during and after the time period the government challenges here. *Id*. at PageID.204–05. The strength of Abbas's relationship with his immediate family in the United States is also demonstrated by the fact that Abbas worked at his daughter's tobacco shop for years, until it was sold in early 2021. *Id*. at PageID.193–94. And later, Abbas worked again at a family business, City Recylers—a company owned by his daughter Alaa's husband. *Id*. at PageID.213. Moreover, Abbas and his children get together every Sunday, *id*. at PageID.178, and he speaks to his daughter Alaa every day, *See* ECF No. 21 at PageID.286. In this way, this factor weighs in favor of finding a continuity of residence in the United States.

Second, Abbas maintained full access to his United States abode. Although, as explained above, Abbas's housing arrangement changed in 2021, this appears to be due mainly to the fact that his son, Mohamad Ali, sold the house that he was sharing with Abbas while Abbas was away. And, as explained above, upon Abbas's return, he lived with his daughter Alaa until he moved in with his son Mohamad Hussanin in March 2023. And while Abbas lived with his daughter Alaa, he had full access to his abode in her house. Although the room Abbas occupied in Alaa's house was referred to as the guest room, Abbas maintained his clothes, personal belongings, and his important documents such as his birth certificate there. *See* ECF No. 21 at PageID.284–85. Thus, this factor also weighs in finding a continuity of

residence in the United States.

Finally, it is undisputed that Abbas did not obtain employment outside of the United States. The entire time that Abbas was in Lebanon, he was either vacationing or taking care of his sister who had had multiple strokes. *See* ECF No. 20 at PageID.172–73; ECF No. 21 at PageID.354; Ex. 2, Second App., at 2.9 ("went to Beirut"); Ex. AA, Interview Video, at 59:32 to 1:00:35. Thus, the majority of the regulatory factors weigh in favor of Abbas.

### b. Other Attendant Factors

The government's argument heavily emphasizes the fact that in 2021 and 2022, Abbas spent 430 days—roughly 59% of his time—outside of the United States. Although true, these numbers ignore that Abbas was continuously present in the United States in 2017, 2018, 2019, 2020. Considering *all* the years since Abbas applied for naturalization to the time his application was denied, Abbas's 430 days outside the United States was over a six-year period, which means more than 80% of his time over that period was spent *within* the United States. *Cf. Iqbal*, 397 F.Supp.3d at 283–84 (affirming denial of naturalization application denied where plaintiff spent 1,198 days outside of the United States over a four-year period); *Raynolds v. Napolitano*, No. 3:11-CV-205-AVC, 2013 WL 2149702, at *3 (D. Conn. May 16, 2013) (affirming denial of naturalization application where plaintiff spent 1,043 days outside of the U.S. over a three-year period.) And, Abbas has been

continuously present in the United States from 2023 to present.

Moreover, the government's argument focuses solely on the changes in Abbas's life that occurred in the United States. However, what is equally important to recognize is that there is no evidence that Abbas took any steps while he was in Lebanon that suggests he was planning to establish a life there. He did not get a job there; he did not open any bank or consumer accounts there; he did not buy a car there. And even though Abbas owned the apartment where he stayed in Lebanon, he had owned that real estate long before the 2021 and did nothing during in 2021 or 2022 that suggests that he planned to remain in the apartment indefinitely. For example, Abbas did not transport his personal property or furniture from the United States to Lebanon, nor did he buy any new furniture during that time.

Finally, the fact that Abbas brought clothes and his passport to Lebanon surely cannot be indicative of establishing residency, as that would make every single international traveler guilty of abandoning their residency. *See Sharma*, 2009 WL 10697616 at *4 ("Courts recognize that a physical absence from one's residence does not necessarily change one's residence or constitute a break in residency.")

In sum, although Abbas's residence varied between his children's houses in 2021 and 2022, it is clear that his residence was always within the United States. Accordingly, this Court finds that Abbas maintained a continuous residence in the United States for the requisite time period and therefore, his petition for

- 15 -

naturalization must be granted.

### III. CONCLUSION

For the reasons stated above, it is **ORDERED** that Abbas's Petition for Naturalization, ECF No. 1, is **GRANTED**.

**This is a final order and closes the above-captioned case.**

*/s/ Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated: March 31, 2026